UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JERRELL BERRYHILL,<br><br>                   Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Corporation,<br><br>                   Defendant. | Case No. 2:15-cv-00045-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Jerrell Berryhill, a truck-driver, suffered a fracture of his right foot, leaving him unable to continue driving trucks. Berryhill was insured by Defendant National Union Fire Insurance Company of Pittsburgh, which provided temporary disability benefits under a disability policy. When the temporary disability period expired, National denied Berryhill total continuous disability benefits, on the grounds Berryhill could work at another occupation. Berryhill brought suit against National for breach of contract, specific performance, and bad faith.

**MEMORANDUM DECISION AND ORDER - 1**

Before the Court is Berryhill's Motion for Partial Summary Judgment, filed on March 25, 2016. (Dkt. 17.)[1] Berryhill seeks summary judgment on the first cause of action in his complaint — breach of contract — at this time. The Court conducted a hearing on November 29, 2016. After carefully considering the parties' arguments and the record before it, the Court issues this Memorandum Decision and Order denying Berryhill's motion in part. .

## FACTS[2]

Berryhill worked as a tractor-trailer truck driver for over 28 years. Prior to that, h was part of a tank crew, as a gunner and a driver, for five years in the Army. (Dkt. 17-10 at 2.) Berryhill received his GED in 1986, and later obtained his Commercial Driver's License, Class A, with all endorsements, prior to becoming a truck driver. (Dkt. 19-2 at 9.)

Defendant National Union Fire Insurance Company of Pittsburgh insured Berryhill under occupational accident insurance policy number TRK9028670-11. (Answer, ¶ 1.1). Berryhill is specifically defined as an insured under the occupational accident policy. (Answer, ¶ 2.4).

On January 13, 2011, Berryhill slipped while tarping a load and fell approximately five feet, sustaining a right tibia fracture and right calcaneus fracture. Berryhill did not return to work following the accident on January 13, 2011, and collected temporary total

---

[1] According to the Court's Case Management Order, all dispositive motions were due by March 25, 2016. (Dkt. 12.) Defendant did not file a cross motion for summary judgment.

[2] The Court finds the following facts material and undisputed or, when disputed, taken in the light most favorable to National, the Defendant and non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the non-moving party on motion for summary judgment).

**MEMORANDUM DECISION AND ORDER  - 2**

disability (TTD) benefits under the occupational accident policy from January 27, 2011, until January 23, 2013. At the time of the accident, Berryhill was forty-nine years of age.[3]

Berryhill requested Continuous Total Disability (CTD) benefits after his TTD benefits were discontinued and submitted a formal Proof of Loss received by National on November 26, 2014. National denied Berryhill's request for CTD benefits under the policy. According to the letter dated April 2, 2014, National denied CTD benefits on the grounds Berryhill would be able to work on a full time basis, with physical restrictions, in a sedentary occupation, citing the Functional Capacity Report in its file. Alternatively, National relied upon a vocational test evaluation and an independent medical exam opinion, which recommended Berryhill undergo retraining for a job in small engine repair, and that it would be safe for Berryhill to engage in such an occupation. (Dkt. 17-10 at 13-14.)

According to National, because Berryhill could work, Berryhill did not meet the definition of "Continuous Total Disability" under the policy, which has a vocational component and a treatment component. The policy states: "Continuous total disability, Continuously Totally Disabled means disability that: (1) prevents an Insured Person from performing the material and substantial duties of any occupation for which he or she is qualified by reason of education, training, or experience; and (2) requires that the Insured Person be under the Continuous Care of a Physician." (Dkt. 17-7 at 20.) "Continuous

---

[3] The evidence in the record indicates Berryhill's date of birth is March 31, 1961. (Dkt. 17-10 at 2.)

**MEMORANDUM DECISION AND ORDER - 3**

Care means regular treatment of examination by a Physician in intervals of no more than 30 days, unless otherwise extended by approval of the Company." *Id*.[4]

Both parties submitted their experts' opinions in support of and opposition to the pending motion. National retained Dr. Spencer Greendyke, an orthopedic surgeon, to conduct an independent medical evaluation, which he did on September 20, 2011, and again on February 12, 2014. Dr. Greendyke's examination revealed a severe malunion of a healed right calcaneus fracture, and anatomic healing of a right tibia fracture. (Dkt. 19-1 at 11.) The malunion of the calcaneus fracture caused deformity of Berryhill's right foot with a widened heel, and subtalar posttraumatic arthritis. (Dkt. 19-1 at 12.)

In Dr. Greendyke's opinion, Berryhill is capable of performing sedentary work with no more than intermittent standing and walking. (Dkt. 19-1 at 2; Dkt. 19-1 at 25.) Dr. Greendyke recommended Berryhill undergo a functional capacity evaluation. Additionally, Dr. Greendyke indicated no "further formal medical intervention and/or medications are felt to be beneficial in the treatment of" Berryhill's injury. (Dkt. 19-1 at 13.) Based upon his assessment, Dr. Greendyke in his affidavit concluded Berryhill's condition "does not require regular treatment and examination by a physician in intervals of no more than 30 days." (Dkt. 19-1 at 2; Dkt. 19-1 at 25.)

Thereafter, OSC Vocational Systems, Inc., evaluated Berryhill at National's request. (Dkt. 19-2 at 1.) Leesa Sjolin of OSC performed a vocational assessment on February 7, 2014. According to her report, Berryhill would be able to work on a full time

---

[4] The policy requires also that, before National will pay CTD benefits, the insured must have been granted a Social Security Disability Award for the disability. (Dkt. 17-7 at 20.) Berryhill began receiving Social Security Disability benefits in November of 2012. (Dkt. 17-10 at 2.)

**MEMORANDUM DECISION AND ORDER - 4**

basis with limitations in standing, walking and carrying, and therefore recommended he work in primarily sedentary occupations. (Dkt. 19-2 at 12.) However, the report indicated also that future employment would require remedial education in basic English, math, and computer skills, and clerical or office work would be difficult because Berryhill is missing the tip of his index and middle finger on his left hand, making keyboarding a challenge. (Dkt. 19-2 at 13.)

The report indicated Berryhill identified a retraining program at North Idaho College, over one hour away from his home in Silverton, Idaho, for a certificate program in small engine repair. (Dkt. 19-2 at 13.) Ms. Sjolin was of the opinion that retraining in small engine repair is "most likely the most feasible outcome…. He also currently owns his own 24x24' shop, as well as pneumatic lifts and tools and equipment that would allow him to be successfully self-employed in the future…." (Dkt. 19-2 at 13.) In Ms. Sjolin's opinion, Berryhill would be able to work in the profession of small engine repair following additional training. (Dkt. 19-2 at 23.) The report indicated also that Berryhill was "not comfortable with his monthly doctor visits, which currently are required but which are not yielding any new information, and he feels that they have become a waste of money." (Dkt. 19-2 at 13.)

Upon review of OSC's report, Dr. Greendyke updated his IME on February 12, 2014. (Dkt. 19-1 at 16.) Based upon his review, Dr. Greendyke was of the opinion Berryhill could return to sedentary work with minimal standing and walking, and also that it would be medically safe for Berryhill to engage in an occupation as a small engine mechanic. (Dkt. 19-1 at 23.)

**MEMORANDUM DECISION AND ORDER - 5**

Berryhill's retained expert, Fred Cutler, M.Ed., prepared a report dated May 1, 2014, and in his opinion, Berryhill has no transferable skills to sedentary work nor is there any unskilled work that Berryhill is otherwise capable of performing competitively. It is Mr. Cutler's opinion that Berryhill is not employable, and the goal of obtaining certification in small engine repair is not an appropriate training goal based upon the nature of Berryhill's injury, and the lack of knowledge of the industry. (Dkt. 17-9 at 2.)

To obtain a certification in small engine repair, Berryhill would require one to two years of training, and remediation in other skills, such as English, computer skills, and math. Mr. Cutler's opinion is that Berryhill's physical limitations, which include the foot injury as well as missing digits on his left hand, would preclude him from completing the training program and becoming competitive with necessary office skills, such as keyboarding. (Dkt. 17-10 at 4.)

Finally, Berryhill indicates in his affidavit that he has "remained under the continuous care of my family physician from the date my TTD benefits were terminated until the present in compliance with the terms of the occupational accident policy." (Dkt. 17-2 at 2.)

## DISPOSITION

1. **Arguments of the Parties**

Regarding the vocational requirement in the disability policy, Berryhill argues the terms are not ambiguous, and disputes National's interpretation. Berryhill contends National's interpretation of the definition of "Continuous Total Disability" allows benefits to be discontinued because Berryhill could return to employment as a small

**MEMORANDUM DECISION AND ORDER - 6**

engine mechanic with additional training. Berryhill argues, however, that the clause is written in the present tense, and requires a finding that Berryhill is presently qualified for a different occupation, without additional training, to discontinue benefits. In response, National asserts Berryhill currently is qualified to engage in a sedentary occupation, and relies on the report of Ms. Sjolin, who identified minimum wage sedentary jobs available in Post Falls, Idaho. National argues alternatively that Berryhill, with assistance, would be able to pursue small engine repair as an occupation. Berryhill, in turn, disputes the availability of any sedentary jobs without a significant commute from his home, and notes that Ms. Sjolin concluded Berryhill, because of his age and work history, would likely not be competitive working for someone else. (Dkt. 20 at 4.)

       Turning to the treatment component and continuous care requirement in the policy, National relies on Dr. Greendyke's affidavit, which indicates Berryhill's injury does not require regular treatment and examination by a physician every thirty days, and therefore asserts Berryhill does not meet the second requirement for a finding of continuous total disability. Berryhill counters that he has "remained under the continuous care" of his physician, in compliance with the policy. Berryhill argues also that National's interpretation requiring mandatory physician visits every thirty days renders the CTD policy illusory, because there are many disabling conditions, like his, that would not require a monthly physician visit.

**2.      Legal Standards**

    **A.      *Summary Judgment***

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). The requirement is that there be no genuine dispute as to any material fact. "Material facts are those that may affect the outcome of the case." *See id*. at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court

must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c) (3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue (dispute) as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

**MEMORANDUM DECISION AND ORDER - 9**

B.  *Insurance Contracts*

Generally, Idaho courts construe insurance contracts in accordance with their plain, unambiguous language; but where the insurance contract is ambiguous, it must be construed in a light most favorable to the insured and in a manner providing full coverage for the indicated risks, rather than narrowing its protection. *See Axis Surplus Ins. Co. v. Lake CDA Dev.*, 2008 WL 4238966, *2 (D. Idaho 2008) (citing *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751 (Idaho 2005)). "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Id*. This determination is a question of law for the Court, and the Court must construe the insurance policy as a whole, not by isolated phrases. *Id*.

Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations. *Id*. If so, the meaning is controlled by the underlying intent of the parties. *See Mintun v. Blades*, 2008 WL 711636, *16 (D. Idaho 2008) (citing *Navarette v. City of Caldwell*, 949 P.2d 597 (Idaho Ct. App.1997)). Intent is a question of fact, to be determined by the factfinder; in contrast, if a contract is unambiguous, the determination of the contract's meaning and legal effect is a question of law. *Id*.

"The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *See Axis*, 2008 WL 4238966 at *2 (quoting *Clark v. Prudential Prop. and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003)). However, standardized contract language must necessarily be somewhat general, in anticipation of varied factual

**MEMORANDUM DECISION AND ORDER - 10**

circumstances. *See Axis* 2008 WL 4238966 at *2 (citing *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984)). "[W]here the policy language is clear and unambiguous, coverage must be determined as a matter of law, according to the plain meaning of the words used." *See Axis* 2008 WL 4238966 at *2 (quoting *Cascade*, 115 P.3d at 754 (internal citation and quotation omitted)).

Assuming no ambiguity, the insured has the initial burden of proving by a preponderance of the evidence that his claim is covered by the insurance contract. *See Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 291 P.3d 399, 725 (Idaho 2012) (citing *Miller v. Belknap*, 75 Idaho 46, 266 P.2d 662, 665 (Idaho 1954)); *see also* 17A COUCH ON INS. § 254:11. If the insured cannot meet this burden, there is no coverage in the first instance.

If the insured meets that burden, the burden shifts to the insurer to prove facts that bring the claim within an exclusionary clause of the insurance contract. *See Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 936 P.2d 1342, 1345 (Idaho Ct. App.1997); *see also* 17A COUCH ON INS. § 254:12.

3. **Interpretation of the Policy**

   A. *Vocational Component*

   To qualify for CTD benefits under the policy, Berryhill must be "continuously totally disabled." The policy defines continuous total disability as a disability that prevents an insured from "performing the material and substantial duties of any occupation for which he or she is qualified…." National contends Berryhill cannot show he is unable to perform the duties of any occupation, because Ms. Sjolin, as well as Dr.

**MEMORANDUM DECISION AND ORDER - 11**

Greendyke, were of the opinion Berryhill could perform sedentary work; or, with additional training, he would be able to pursue a career in small engine repair.

First, the Court will resolve the legal question regarding interpretation of the policy. The plain, ordinary terms of the policy language conflict with National's interpretation, which would allow National to deny benefits even if the insured is not currently qualified for other occupations. The policy's definition recognizes the insured's current training, education, and experience, not occupations for which the insured may become qualified by additional training or experience.

There is a distinct difference between a disability policy that recognizes current, versus future, experience, and courts have so recognized. *See, e.g., Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1219 (9th Cir. 2008) (plan language defining disability as being unable to perform the duties of his own "or any other occupation for which he *is or becomes* reasonably fitted by training…" allowed Liberty to consider insured's transferrable work skills to sedentary occupations); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir. 1990) (plan language defining disability as "unable to engage in any occupation for which he *is qualified*…" favored the insured, and recognized the insured's current abilities).

Here, if National intended a policy allowing consideration of future training and experience, the policy would (or should) have been written differently. From the Court's review of the case law, certain disability policies define disability as an inability to perform the duties of any occupation for which the insured "is or becomes able" to do by reason of education or training. The policy here, in contrast, under its plain, ordinary

**MEMORANDUM DECISION AND ORDER - 12**

meaning, takes the insured at the point in time he or she is seeking CTD benefits, and asks what skills, education, or abilities the insured is currently qualified for, not what he or she could do in the future with additional education and training.

During oral argument, National conceded Berryhill would require additional training to become a small engine repair mechanic. National's expert, Leesa Sjolin, indicated Berryhill would be required to attend a retraining program at North Idaho College to learn the skills necessary to become a small engine repair mechanic. (Dkt. 19-2 at 13.) Accordingly, the Court finds as a matter of law that the vocational provision is unambiguous, and requires National to view its insured with regard to his current skills and abilities, which would exclude the retraining program for small engine repair.

Nonetheless, the Court finds the competing expert opinions create a genuine issue of material fact as to whether Berryhill can perform the duties of a sedentary occupation based upon his current skills and education. Mr. Cutler concluded Berryhill is unable to perform even sedentary work, and discredited the opinions of Dr. Greendyke and Ms. Sjolin. Specifically, Mr. Cutler determined there are no viable employment options where Berryhill resides consistent with the physical restrictions specified by Dr. Greendyke. Further, Dr. Cutler concluded Berryhill has no transferable skills to sedentary work, nor is there any unskilled work Berryhill is otherwise capable of performing competitively.

In contrast, Ms. Sjolin and Dr. Greendyke are of the opinion Berryhill can perform sedentary work.[5] Ms. Sjolin's February 7, 2014 report indicated that sedentary

---

[5] There is also the issue of Berryhill's social security award determination, which found him completely disabled. The written determination is not in the record, however.

**MEMORANDUM DECISION AND ORDER - 13**

employment would be available in Coeur d'Alene and Post Falls, but the one hour commute may make that employment less feasible, and these positions may require additional education. (Dkt. 19-2 at 12.) Ms. Sjolin identified sedentary jobs available in nearby Post Falls in assembly, but they would be minimum wage, and a "poor match for his interests and salary expectations." *Id.* Dr. Greendyke concluded Berryhill would be capable of returning to sedentary work at a medium or medium/heavy demand level. (Dkt. 19-1 at 23.)

The Court cannot resolve the factual question posited by the conflicting expert opinions as to whether, at the time National denied CTD benefits, Berryhill was qualified for sedentary work.[6] Material questions of fact exist, therefore, regarding whether Berryhill meets the first criteria of continuous total disability, and thus, whether he qualifies for CTD benefits. The Court does find as a matter of law, however, that National improperly denied CTD benefits on the basis that Berryhill could be qualified for other work with additional education and training.

### B. *Treatment Component*

National argues Berryhill must meet both the vocational and the continuous care requirements before Berryhill can be considered totally disabled, and because Berryhill's condition does not require a doctor's visit every thirty days, he cannot meet the definition of continuous total disability. The Court first notes the April 2014 denial letter did not include this reason in support of National's denial of benefits.

---

[6] During oral argument, both parties agreed that the issue whether Berryhill could perform sedentary work required a factual determination, although Berryhill argued it was conceded by Ms. Sjolin's February 7, 2014 report. The Court disagrees.

**MEMORANDUM DECISION AND ORDER - 14**

Second, the Court finds the continuous care requirement ambiguous. National interprets the requirement akin to a medical necessity requirement. Because Berryhill's condition does not require further medical care or treatment on a monthly basis, Berryhill cannot meet the continuous care requirement. Berryhill, on the other hand, argues National's interpretation would render the policy illusory, as there are many disabling conditions that would not necessitate monthly physician visits or treatment. Berryhill argues he has met the requirement, because he has remained under the continuous care of his family physician until the present, presumably by visiting the doctor every thirty days.[7]

The Court has identified persuasive authority indicating Idaho courts would not interpret the continuous care requirement in a literal manner. In *Penrose v. Commercial Travelers Ins. Co.*, 275 P.2d 969 (Idaho 1954), the Idaho Supreme Court had occasion to consider a disability policy requiring the insured to be "continuously confined within the house," and to be under the regular attendance of a physician who personally treated him every seven days, before benefits would be payable.

Penrose had a heart condition, and he was instructed to refrain from farm work and rest. Mr. Penrose did as he was told, but left the confines of the four walls of his home to sit outside and enjoy the sunshine, or direct his farmworkers. Also, Penrose's wife drove her husband to church and to the doctor when the doctor could not make house calls. Travelers, interpreting the house confinement clause literally, denied

---

[7] There is some evidence in the record Berryhill visited his physician monthly, as Ms. Sjolin commented Berryhill "is not comfortable with his monthly doctor visits, which currently are required but which are not yielding any new information, and he feels that they have become a waste of money." (Dkt. 19-2 at 13.) But Berryhill's medical records are not part of the record before the Court.

**MEMORANDUM DECISION AND ORDER - 15**

benefits, even though Penrose could no longer perform substantially all the duties required of his occupation as a farmer.

The court noted that, although Travelers asserted an absence of ambiguity, similar clauses had been construed by other courts adverse to the insurer on the grounds that a strict technical interpretation should be rejected. 275 P.2d at 973. The court found the majority of jurisdictions advanced the proposition that the house confining clause is "merely evidentiary, designed to establish with certainty that the insured was totally disabled." *Id.* at 974. Other courts placed emphasis on the nature of the illness or disability rather than on the extent of the confinement, reasoning the house confinement clause was intended to describe the character, or degree, of the illness rather than proscribe certain conduct. *Id*.

The Idaho Supreme Court followed the majority, holding that so long as the insured was continuously disabled, and did not leave his home except for therapeutic reasons, the court would consider him substantially confined to his home by reason of illness, and such would constitute substantial compliance under the house confinement clause. *Id.* at 975.

The court considered also the policy's requirement that the insured be under the regular attendance of a physician "who visited him or personally treated him at least once in every seven days." The record indicated the physician, at least for the first two months, may have visited the insured every week; but thereafter, the doctor saw the insured once a month. The physician testified at trial that there was nothing in particular he could do for the insured, other than continue to advise him to rest and refrain from working. In

**MEMORANDUM DECISION AND ORDER - 16**

addition, visits more often than monthly were not required and would be useless, not to mention an unnecessary expense to the insured. *Id.* at 975.

Finding the purpose of the visitation requirement was evidentiary to establishing the good faith nature of the claim and the extent and duration of the disability, the court held Penrose substantially complied with the visitation requirement. *Id.* at 975. The court noted it would be "impractical and indeed almost an impossibility to limit treatments or visitations to precise intervals of time." *Id.* Again, the court construed the visitation provision as an evidentiary one, designed to guard against possible fraud and establish the extent and duration of the disability. *Id.*

The Court finds the reasoning in *Penrose* persuasive, and construes the visitation provision in National's CTD definition as an evidentiary one. National's own expert, Dr. Greendyke, indicated no further formal medical intervention would be beneficial for treatment of Berryhill's injury. Dr. Greendyke indicated also that Berryhill's condition "does not require continuous care." In other words, no further care would change his prognosis or improve his condition. Here, there is no claim Berryhill acted in bad faith or committed fraud, or any dispute as to the nature and extent of Berryhill's injury. As in *Penrose,* it would be similarly impractical and impossible to limit Berryhill's visitations to precise intervals of time, and require him to visit his physician every thirty days.

Second, the Court is required to view the policy provisions as a whole. National's medical necessity requirement would render the second clause of the provision, "unless otherwise extended by approval of the Company," superfluous. For example, if a certain medical condition necessitated treatment or examination every thirty days, there would be

**MEMORANDUM DECISION AND ORDER - 17**

no reason for National to extend the intervals, and the clause allowing for an extension would be unnecessary. To give meaning to the provision allowing National to extend the thirty day interval upon its approval, the continuous care requirement must be read to allow longer treatment intervals for disabling conditions that do not require, as medically necessary, monthly treatment or examination. The Court's interpretation is in line with the reasoning in *Penrose*, discussed above.

However, on the facts before it, the Court is unable to grant summary judgment. Berryhill indicates he has remained under the continuous care of his family physician in compliance with the terms of the policy, but there are scant facts in the record regarding what, in fact, he did, or what Berryhill's physician indicated was necessary for appropriate care and treatment. On the other hand, National's own expert indicated Berryhill's condition does not require regular treatment and examination by a physician every thirty days. (Dkt. 19-1 at 2.) Although the facts here tip in favor of Berryhill, the Court is unable to resolve the factual question of substantial compliance, and whether National should have allowed longer intervals under the facts here.

## CONCLUSION

National cannot, on the one hand, read into the policy terms that are not there, and on the other, adopt a literal interpretation without regard to the policy language as a whole. The plain meaning of the vocational component regards the insured as he is, not what he could become by reason of future training or education. Similarly, the continuous care component recognizes, by virtue of National's ability to excuse physician visits every thirty days, that not every disabling condition requires monthly physician visits as a

**MEMORANDUM DECISION AND ORDER - 18**

medical necessity. Nonetheless, there are disputed issues of material fact regarding whether Berryhill is qualified to perform any other occupation, and what constitutes substantial compliance with the continuous care requirement.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)  Plaintiff's Motion for Summary Judgment (Dkt. 17) is **GRANTED IN PART AND DENIED IN PART,** consistent with the analysis above.

The Court will schedule a telephonic scheduling conference with the parties via a separate notice of hearing for the purpose of setting a trial date and pre-trial deadlines.



DATED: December 6, 2016

_____

Honorable Candy W. Dale
United States Magistrate Judge